IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**736 BUILDING OWNER, LLC,** *et al.* **PLAINTIFFS**

**V.                                            CIVIL ACTION NO. 3:14-CV-222-KS-MTP**

**REGIONS BANK                                                DEFENDANT**

<u>MEMORANDUM OPINION AND ORDER</u>

For the reasons provided below, the Court **denies** the Motion to Intervene [113] filed by Carlisle 2010 Historic Tax Credit Fund II Limited Partnership.

*A.     Background*

This is a breach of contract case arising from loans for a development project. Plaintiff 736 Building Owner, LLC ("Owner") was established by a group of investors to renovate a building in downtown Jackson. Owner entered into a promissory note and loan contract with Defendant Regions Bank in the amount of $2.1 million. The loan was guaranteed by Plaintiff Oscar De Leon, one of Owner's initial members, and secured by the building itself and certain asserts owned by Plaintiff Cytec Software Systems, Inc. ("Cytec"). The loan was not enough to finish the project, and Plaintiffs had to seek other financing. Accordingly, Regions agreed to increase Plaintiffs' line of credit from $2.1 million to $2.4 million, and Carlisle 2010 Historic Tax Credit Fund II Limited Partnership ("Carlisle") agreed to contribute $788,480.00 of tax credit financing. Carlisle then became a member of one of Owner's member LLC's.

Regions subsequently declined to advance further funds on the line of credit, and Carlisle and De Leon filled the gap, providing additional funds. De Leon eventually

filed this lawsuit on behalf of himself, Owner, and Cytec, alleging that Regions breached the loan commitment. On May 4, 2016 – over two years after this case had begun, after discovery had concluded and dispositive motions had been briefed, and approximately one month before trial – Carlisle filed a Motion to Intervene [113]. The motion is ripe for the Court's review.

## B.    *Rule 24(a)(2)*

First, Carlisle argues that it is entitled to intervention of right pursuant to Rule 24(a)(2). An applicant for intervention under Rule 24(a)(2) must satisfy four requirements:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Entergy Gulf States La., LLC v. United States EPA*, 817 F.3d 198, 203 (5th Cir. 2016) (citing FED. R. CIV. P. 24(a)(2)). "Failure to satisfy any one requirement precludes intervention of right." *Id.* The Court's analysis is pragmatic and flexible, focusing "on the particular facts and circumstances surrounding each application . . . ." *Id.* "The rule is to be liberally construed, with doubts resolved in favor of the proposed intervenor." *Id.*

Among other things, Defendant argues that Carlisle's application for intervention was not timely. The Court evaluates the timeliness of an intervention motion by examining four factors: "(1) the length of time applicants knew or should

have known of their interest in the case; (2) prejudice to existing parties caused by applicants' delay; (3) prejudice to applicants if their motion is denied; and (4) any unusual circumstances." *LULAC v. City of Boerne*, 659 F.3d 421, 434 (5th Cir. 2011).

   1.   *Timeliness*

After consideration of the record, the Court concludes that Carlisle knew or should have known of its interest in this case months – perhaps years – ago. Plaintiffs filed their Complaint [1-1] against Defendant on February 27, 2014. Therein, they alleged that Defendant issued a written loan commitment after Carlisle committed to contribute tax credit funding, but later refused to advance additional funds. Plaintiffs alleged that Defendant's refusal was "willful and malicious."

It is undisputed that Carlisle owns an interest in Owner, and that Carlisle entered into an Agreement and Resolution Concerning Litigation [122-2] with Owner on January 12, 2015 – almost a year after this lawsuit started. In the Agreement, Carlisle consented to Owner's retention of counsel and pursuit of this litigation "based on the limited information known to [it] regarding the Lawsuit." Carlisle's consent covered "the claims currently asserted in the lawsuit," and Plaintiffs were not authorized to pursue additional claims without Carlisle's consent. Plaintiffs agreed to not settle any claims without Carlisle's "express written consent," and the Agreement provided that Carlisle would receive twenty percent of any settlement after fees and costs.

Plaintiffs also agreed to provide Carlisle "and its counsel copies of all material pleadings, motions, orders, discovery and communications relating to the Lawsuit . . 

3

. ," and to keep Carlisle and its counsel "fully informed of all material developments in the Lawsuit." The documents [113-2] which Carlisle claims provided notice of its potential claim – internal e-mails produced by Defendant during discovery – were first produced to Plaintiff on August 12, 2015 [47]. Therefore, either Carlisle received them at approximately the same time pursuant to its litigation agreement [122-2] with Plaintiffs or it had access to them.

"Actual knowledge is not required" to satisfy this first factor. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264 (5th Cir. 1977). The Court should consider the sophistication of the party seeking intervention. *Id.* Here, the litigation agreement [122-2] demonstrates that Carlisle was aware of the nature of this litigation, and that it knew or should have known of all material developments. Indeed, Carlisle's 30(b)(6) representative testified [122-1] that he knew Defendant had declined to advance further funds, and the litigation agreement demonstrates that Carlisle wields significant control over Plaintiffs' actions in this lawsuit. Therefore, Carlisle knew or should have known about the documents which it claims provided notice of its claims no later than August 2015, but it did not file a Motion to Intervene [113] until over eight months later in May 2016. This factor weighs heavily in favor of denying the motion to intervene.

    2.    *Prejudice to Defendant*

As for the second factor,"the prejudice to the original parties to the litigation that is relevant to the question of timeliness is only that prejudice which would result from the would-be intervenor's failure to request intervention as soon as he knew or

reasonably should have known about his interest in the action." *Id.* The prejudice to existing parties caused by the delay in seeking intervention, "must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994).

If Carlisle is permitted to intervene, the parties would have to conduct additional discovery, and the trial would be delayed for months. Carlisle asserts that a delay of "a few months" is not "unduly prejudicial." However, Carlisle is underestimating the amount of delay that its intervention would likely cause. Carlisle will presumably want to serve discovery requests on Defendant, and Defendant will likely reciprocate with its own discovery requests. Depositions would likely be noticed or, at least, reconvened, and Carlisle would retain an expert to calculate its damages, as Plaintiff has done. Defendant would be entitled to depose that expert and designate its own rebuttal expert, who would then be subject to deposition by Carlisle. In the end, Carlisle's intervention would essentially restart the discovery period, pushing the trial of this case back six or seven months.

When Carlisle filed its motion to intervene, discovery had concluded, the dispositive motions were fully briefed, and trial was only a month away. In contrast, if it had sought intervention in August 2015, the parties would have had three to four months left in the discovery period, and Carlisle could have participated in the ongoing discovery without as much additional cost in time and money to the parties. Furthermore, the Court assumes that Carlisle would want a chance to weigh in on the

pending motions and file its own dispositive motions, rendering the time and money that the parties have already spent on briefing at least partially wasted. For these reasons, the Court concludes that Defendant would be prejudiced by Carlisle's delay in requesting intervention. This factor weighs in favor of denying the motion to intervene.[1]

### 3. *Prejudice to Carlisle*

Carlisle argues that it has a substantial interest in this litigation that could be impaired by its disposition, but it provided very little discussion on this factor in briefing. In fact, the portions of its initial [114] and reply [123] briefs addressing this factor are less than one page combined. The Court is not inclined to accept Carlisle's bare, conclusory statement that a judgment in Defendant's favor would impair its interests in any separate litigation against Defendant. The Court also notes that Carlisle is aware of everything that occurs in this case and exercises a degree of control over Plaintiffs' actions. Nevertheless, for the purpose of addressing the current motion, the Court will assume that this factor weighs in favor of granting the motion to intervene.

---

[1] Carlisle briefly argues that Defendant is precluded from arguing that it would be prejudiced by Carlisle's intervention at this point in the litigation because it filed a Motion to Dismiss [9] in July 2014 for failure to join Carlisle as a party. As noted above, the prejudice to existing parties caused by the delay in seeking intervention is "measured by the delay in seeking intervention . . . ," rather than "the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Sierra Club*, 18 F.3d at 1206. Therefore, Defendant's motion to dismiss is irrelevant because the pertinent question is whether Defendant would be prejudiced by Carlisle's intervention *at this point in time.*

### 4. *Unusual Circumstances*

The parties have not highlighted any "unusual circumstances" relevant to this issue. The fourth factor is neutral.

### 5. *Conclusion*

The Court's Rule 24(a)(2) analysis is pragmatic and flexible, focusing "on the particular facts and circumstances surrounding each application . . . ." *Entergy*, 817 F.3d at 203. Likewise, the Court's timeliness determination "is not limited to chronological considerations but is to be determined from all the circumstances." *Stallworth*, 558 F.2d at 263. After considering the parties' briefing and the record, the Court concludes that Carlisle has been or should have been aware of its interest in this litigation for longer than it claims. The Court also concludes that Carlisle – through its ownership interest in one of the Owner's members and through the litigation agreement with Plaintiffs – has had and continues to have some degree of influence over Plaintiffs' actions in these proceedings. Carlisle's intervention would require a continuance of six to seven months, which would prejudice Defendant, and Carlisle's claim of prejudice if intervention is denied is vague, at best.

Therefore, the Court finds that the first two factors of the timeliness analysis outweigh the third factor. Carlisle's Motion to Intervene [113] was not timely, as required by Rule 24(a)(2), and "[f]ailure to satisfy any one requirement precludes intervention of right." *Id.*

## C.   *Rule 24(b)*

Next, Carlisle argues that the Court should permit it to intervene pursuant to

Rule 24(b). "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3). "Permissive intervention is wholly discretionary with the district court . . . even though there [may be] a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471 (5th Cir. 1984).

For the reasons provided above, the Court finds that Carlisle's motion was untimely, and that its intervention would "unduly delay or prejudice the adjudication of the original parties." FED. R. CIV. P. 24(b)(3). For all these reasons, the Court **denies** Carlisle's Motion to Intervene [113].

SO ORDERED AND ADJUDGED, on this, the 31st day of May, 2016.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE